BYRON J. CLAYPOOL, JR.

                Plaintiff,

v.

                                             Case No. 23-cv-343-pp

JUSTINA M. HAMILTON, JASON J. ALDERS,
THOMAS D. WIEGAND, MICHAEL J. GIERNOTH
and DR. WOODS,

                Defendants.

## ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

Byron J. Claypool, Jr., who was confined at the Racine Correctional Institution when he filed this lawsuit and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. The plaintiff has paid the full filing fee. This order screens his complaint, dkt. no. 1.

### I. Screening the Complaint

#### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated individual raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case

1

under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff has sued five defendants who work at Racine Correctional Institution: Justina M. Hamilton, a licensed practical nurse; Correctional Officer Jason J. Alders; Captain Thomas D. Wiegand; Michael J. Giernoth, security director; and Dr. Woods, who was the plaintiff's advanced care provider. Dkt. No. 1 at ¶¶4-8. The plaintiff alleges that on August 28, 2016, he

sustained severe injuries in a motor vehicle accident that included amputation of his left leg from the hip down, a shattered pelvic bone, urethra transection, detached buttocks with rectal injury resulting in a permanent colostomy bag and a severed sciatic nerve. Id. at ¶¶10-11. The plaintiff's injuries allegedly resulted in chronic, severe nerve pain. Id. He alleges that he was hospitalized for several months after the accident and that before he was incarcerated, he was prescribed Oxycodone and Lyrica (Pregabalin) for pain. Id. at ¶14. He says that when he was incarcerated, the Department of Corrections ("DOC") allowed his Pregabalin medication but did not allow the Oxycodone. Id. at ¶18. The plaintiff states that he took Pregabalin for his nerve pain "which was absolutely necessary to have." Id. at ¶19.

The plaintiff alleges that before May 8, 2020, LPN Hamilton demonstrated "personal animus" towards him "for an unknown reason[.]" Id. at ¶15. On May 8, 2020, the plaintiff allegedly reported to the medication line to receive his Pregabalin and Hamilton gave him the medication "pursuant to DAI Policy #500.80.11(I)(F)(1-7)(a) and (b)." Id. at ¶¶20-21. The plaintiff says that he took his medication cup from Hamilton, swallowed the medication and, as required by policy, immediately opened his mouth and moved his tongue around to show Hamilton. Id. at ¶22. Hamilton allegedly visually inspected the plaintiff 's mouth and gave her approval that he had swallowed his medication, at which time the plaintiff left the area to return to his unit. Id. at ¶23.

The plaintiff alleges that on that same day (May 8), Hamilton wrote Incident Report #00422944, which described a "suspected cheeking" of the Pregabalin medications she gave him that day. Id. at ¶24. The incident report says that, after administering the medication, Hamilton asked the HSU (health services unit) officer to have the plaintiff searched and that CO Alders

3

approached the plaintiff in the hallway outside the HSU and asked him to open his mouth. Id. The incident report also states that the plaintiff began manipulating the medication in his mouth resulting in Alders seeing an "orange like capsule item before [the plaintiff[ could swallow it." Id. The report says that Alders asked Hamilton what color the medication was, and Alders confirmed that that was the capsule that he saw. Id.

The plaintiff alleges that because Hamilton had already thoroughly checked his mouth and determined that she had not detected any medication, she had no basis on which to suspect that he had "cheeked" his medication or to have Alders check him in the hallway. Id. at ¶25. The plaintiff states that contrary to Hamilton's incident report allegations, when Alders checked him, he did not discover any medication in the plaintiff's mouth because the plaintiff had not "cheeked" any medication. Id. at ¶27. He alleges that Alders lied and colluded with Hamilton about the plaintiff "cheeking" his medication. Id. at ¶28. The plaintiff alleges that, contrary to policy, Alders made no attempt to physically obtain the medication when he viewed it in the plaintiff's mouth. Id. at ¶29. The plaintiff states that Alders contacted Captain Wiegand after placing the plaintiff in a locked room and when Wiegand arrived and heard Alders's story, he released the plaintiff from lockup and sent him back to his unit without placing him in temporary lockup. Id. at ¶¶30-31.

The plaintiff alleges that even though Alders and Wiegand did not see or obtain medication in the plaintiff's mouth and "did not write the mandatory conduct report for Misuse of Medication," on May 13, 2020, Wiegand recommended that the doctor review the need for the medication "as it was misused and likely going to be sold to someone else." Id. at ¶32. The plaintiff alleges that Wiegand had no evidentiary basis for his comments and actions,

4

and that he caused the plaintiff harm, which denied the plaintiff due process of law. Id. at ¶33. He says that Alders and Hamilton did not write him a conduct report for misuse of medication, as required under Wis. Admin. Code §§DOC 303.71(2) and (3), which denied him due process of law. Id. at ¶¶34-35.

On May 14, 2020, Security Director Giernoth allegedly ordered that a copy of the incident report be sent to the HSU "for follow-up on medication." Id. at ¶37. The plaintiff says that Wiegand failed to assure that Alders and Hamilton were properly trained with respect to "medication distribution, report writing and honesty in report writing." Id. at ¶38. The plaintiff states that Hamilton's, Alders's and Weigand's actions, and failures to act, violated "Employee Work Rules" policy and procedure. Id. at ¶40.

The plaintiff alleges that on May 14, 2020, Dr. Woods received the incident report and discontinued the plaintiff's Pregabalin medication without investigation or medical judgment and that not taking the medication caused the plaintiff "severe and excruciating pain." Id. at ¶¶41-43. Woods allegedly made a note on May 13, 2020 that said, "Inmate was caught cheeking his Lyrica medication. See Incident Report. I will discontinue his Lyrica." Id. at ¶45. The plaintiff says that the pain was so physically and emotionally traumatic that he wrote at least six health service requests to the HSU. Id. at ¶44. He alleges that after discontinuing the medication without medical judgment, Woods "continu[ed] to deny the medication as a punishment rather than for minimal medical reasons." Id. at ¶46. The plaintiff allegedly contacted someone from the psychological services unit due to the mental trauma and extreme distress resulting from the denial of his pain medication. Id. at ¶47.

The plaintiff alleges that June 1, 2020, he met with Woods, informed him that he had not cheeked his Lyrica and that Hamilton and Alders had lied. Id.

5

at ¶48. He says that Woods "finally agreed" that he would talk to everyone involved but that "Alders continued to double down on his lie that the plaintiff had cheeked his medication." Id. at ¶¶49-50. Hamilton allegedly told Woods that she had not observed anything in the plaintiff's mouth and that she wrote the incident report even though she knew the plaintiff had not cheeked his medication. Id. at ¶51. The plaintiff states that on June 4, 2020, Woods returned his Pregabalin pain medication. Id. at ¶52.

The plaintiff claims that Hamilton and Alders violated his constitutional right to be free from retaliation, cruel and unusual punishment and denial of due process of law by creating and filing a falsified incident report that resulted in the confiscation of the plaintiff's pain medication. Id. at ¶54. The plaintiff also claims that the defendants, without investigation, used a falsified incident report to discontinue the plaintiff's pain medication without due process, which caused him "excruciating physical and emotional pain" for at least twenty-one days. Id. at ¶56. He claims that this violated his due process rights because his medication was discontinued without a major conduct report for misuse of medication having been written, as required under Wis. Admin. Code §§DOC 303.58(4)-(6) and DOC 303.71(2)-(3). Id. at ¶57. The plaintiff claims that Woods violated his rights under Eighth and Fourteenth Amendments by discontinuing his medication without investigation or medical judgment and by "using the discontinuance as a punishment for an alleged offense rather than a medical need or necessity[.]" Id. at ¶¶59-60. The plaintiff claims that Wiegand and Giernoth denied him his right to due process of law by failing to adequately supervise and train Hamilton and Alder regarding "DOC Work Rules as to report writing and honesty in doing so [] and in reporting wrongful actions and crimes of other staff." Id. at ¶63.

The plaintiff seeks declaratory relief, compensatory damages and punitive damages. Id. at 13-14.

C.  Analysis

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of a prisoner. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Id. at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)). An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the inmate's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)).

The plaintiff's alleged severe, chronic pain constitutes a serious medical need under the Eighth Amendment. See Diaz v. Godinez, 693 F. App'x 440, 443-44 (7th Cir. 2017) (collecting cases). And his allegations that Dr. Woods discontinued his pain medication for twenty-one days without medical judgment and with the knowledge that it caused the plaintiff severe pain states a claim for deliberate indifference. The plaintiff may proceed on an Eighth Amendment medical care claim against Dr. Woods.

7

The plaintiff has not stated any claims against the other defendants. He has not alleged that the other defendants were responsible for discontinuing his medication, so he cannot proceed on an Eighth Amendment claim against them. See Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009).

The plaintiff claims that Hamilton and Alders retaliated against him by filing the falsified incident report. To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff has not stated a retaliation claim because he has not alleged that any First Amendment-protected activity in which he engaged prompted the defendants to act.

The plaintiff claims that the defendants violated his right to due process of law. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." The plaintiff has not stated a due process claim because he has not alleged that the defendants deprived him of a property or liberty interest. The plaintiff has not alleged that he was punished; he states that the defendants violated his due process rights only by *not* issuing him a conduct report, in violation of the Wisconsin Administrative Code, after Hamilton filed the incident report that falsely said he cheeked his medication.

The provisions of the Wisconsin Administrative Code cited by the plaintiff do not appear to require that the defendants write him a conduct report or discipline him after issuing him an incident report. See Wis. Admin. Code

8

§§DOC 303.58(4)-(6) (Misuse of Medication) and DOC 303.71(2)-(3) (Major Offenses). Even if the defendants had violated DOC policy, the defendants' alleged failure to follow the DOC's administrative regulations does not violate the Constitution. See Courtney v. Butler, 66 F.4th 1043, 1052-53 (7th Cir. 2023) (citing Thompson v. City of Chicago, 472 F.3d 444, 454 (7th Cir. 2006); Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017) ("Section 1983 protects against 'constitutional violations, not violations of … departmental regulation and … practices ….'")); see also Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003). The plaintiff believes that Hamilton and Alders falsified the incident report by stating that he cheeked his medication. That allegation by itself does not state a claim. Cf. Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984) (allegations of falsified disciplinary reports do not state a claim, provided that the required procedural due process protections set forth in Wolff v. McDonnell, 418 U.S. 539 (1974), are met). The plaintiff alleges that despite the alleged falsified incident report, staff did not issue him a conduct report. The defendants did not bring disciplinary charges against the plaintiff based on the incident. He has not stated a claim for violation of his due process rights.

Nor has the plaintiff stated a claim based on the allegations that Wiegard and Giernoth failed to supervise Hamilton and Alders. A §1983 claim lies against individuals personally responsible for the constitutional violation. Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2011). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. This can include having "known about the conduct, facilitated it, approved it, condoned it, or turned a blind eye for fear of what they might see." Rasho v. Elyea, 856 F.3d

469, 478 (7th Cir. 2017) (citations, internal quotation marks, and alterations omitted). Wiegard's and Giernoth's alleged failure to supervise Hamilton and Alder does not state a claim.

The plaintiff may proceed on an Eighth Amendment medical care claim against Dr. Woods. The court will dismiss all remaining claims and defendants.

## II. Conclusion

The court **ORDERS** that defendants Hamilton, Alders, Wiegand and Giernoth are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order will be electronically transmitted to the Wisconsin Department of Justice for service on defendant Dr. Woods. Under the informal service agreement, the court **ORDERS** Dr. Woods to file a responsive pleading to the complaint within 60 (sixty) days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that the plaintiff must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if his address changes. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include two guides prepared by court staff to address common questions that arise in cases filed by unrepresented plaintiffs. Entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," these guides contain information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 6th day of September, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**